IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| PETER CHARNOCK § | |
| § | |
| V. § | MISCELLANEOUS NO. G-10-mc-7015 |
| § | (Lead Case No. G-10-cv-450) |
| FIDELITY NATIONAL PROPERTY and § | |
| CASUALTY INSURANCE COMPANY § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court with the consent of the Parties pursuant to 28 U.S.C. §636(b)(1)(c). Having considered and reviewed the evidence in a trial on March 27, 2013, the Court now issues the following Findings of Fact and Conclusions of Law.

1.  Plaintiff, Peter Charnock, a licensed building contractor since 1984, is the owner of an elevated home at 1140 Sailfish, located within the City of Bayou Vista in Galveston County, Texas. He purchased the home in 1972 for $66,000.00.

2.  At all times relevant to this case, Charnock's home was insured under a Standard Flood Insurance Policy (SFIP) issued by Defendant, Fidelity National Property and Casualty Insurance Company, a WYO carrier under the National Flood Insurance Program. The SFIP provided coverage in the amounts of $250,000.00 for the building and $10,500.00 for contents.

3.  In early September 2008, Charnock's home was significantly damaged by flooding caused during Hurricane Ike.

4. Charnock notified Fidelity of his claim and following an adjuster's visit, Fidelity, on October 3, 2008, issued preliminary checks in the amount of $10,000.00 for building damage and $5,000.00 for contents damage.

5. On November 2, 2008, Charnock filed a pro se proof of loss which included a detailed list of the damages to his building in the amount of $84,411.00 and its contents in the amount of $32,949.76, for a "total loss due to Hurricane Ike" of $117,360.76.

6. On December 8, 2008, the adjuster assigned to the claim issued his report which assessed the building loss at $53,429.08 and the contents loss as "in excess of the policy limits." On January 15, 2009, Fidelity issued additional checks in the amounts of $42,429.00 for building damage and $5,500.00 for contents damage.

7. On June 4, 2009, Fidelity issued its final check in the amount of $14,408.59 for recoverable depreciation on the building.

8. In total, by June 4, 2009, Fidelity had paid Charnock a total of $66,837.67 for damage to his home.

9. Unhappy with Fidelity's payments, Charnock signed a sworn Proof of Loss, dated July 22, 2009, claiming a net amount of $258,500.00, the policy limits. Apparently, Charnock sent the Proof of Loss to their attorney, Samuel Bearman, who then sent it to Fidelity. Included with the Proof of Loss was a detailed Flood Repair Estimate prepared by Halley Lovato, of Top Construction, Inc., which set the repair/replacement cost of Charnock's damages at only $90,750.00. Charnock testified that he did not recall ever seeing Lovato's report. He testified he probably would have remembered

it because he would have disagreed with it.  He further testified that the Proof of Loss he swore to exceeded his actual damages, a fact he referred to as a "technicality."  On October 19, 2009, Fidelity sent a letter to Charnock's attorney, Samuel Bearman, acknowledging receipt of "*your* Proof of Loss in the amount of $258,00.00" and explaining why Fidelity was denying any further payments.  Since the letter specifically referred to the "enclosed" estimate the Court assumes, without finding, that Bearman, acting as counsel for Charnock, included Lovato's estimate with Charnock's Proof of Loss and submitted both to Fidelity.  Regardless, Charnock is bound by the acts of his attorney.  Callip v. Harris County Child Welfare Dept., 757 F.2d 1513, 1522 (5th Cir. 1985) (citing Link v. Wabash R. Co., 370 U.S. 626, 633 (1962)

10. On April 27, 2011, Charnock, through current counsel, Martin Mayo, sued Fidelity for breach of contract.

11. Ultimately, Charnock, using his own construction company, completely repaired his home, restoring it to its pre-Ike condition, for a total cost, including labor and profit, of $133,269.13.  At trial, Charnock testified that he had calculated this figure "last night."

12. The Standard Flood Insurance Policy contains numerous mandatory provisions addressing a Proof of Loss.  Among others, the Proof of Loss must state the amount the insured is claiming under the policy and be sworn to by the insured.  In completing the Proof of Loss, the insured is required to "use your own judgment concerning the

amount of loss and justify that amount" and must not misrepresent any material facts or include false statements. See SFIP §§ VII. J.5 and VII.B.1.

13. While this Court would be inclined to take the more relaxed approach, urged by Plaintiff's counsel, to the sufficiency of documentation submitted in support of the Proof of Loss and the need to pinpoint the expense of repairs and replacement items to make the amount of the Proof of Loss "match" the documentation amount, Cf. Sunray Village Owners' Association v. Old Dominion Insurance Co., 546 F.Supp. 2d 1283 (N.D. Fla. 2008), as opposed to the more draconian approach favored by Fidelity, it cannot "turn a blind eye" to Charnock's submission, under oath, of a known falsely inflated claim. Whether Charnock submitted the Proof of Loss out of anger, frustration, caution, or some other reason, he knew it was excessive at the time he signed it. The submission seems even more egregious since Charnock had the experience to calculate his loss with much more accuracy than most insureds, in fact, his original pro se proof of loss was much more accurate than the one pending when this suit was filed. It is clear to the Court that Charnock, in violation of the policy, swore to false statements in the Proof of Loss; did not use his best judgment concerning the amount of his claim; and did not justify the policy limit amount of $258,500.00 he claimed was due.

14. It may be unrealistic to expect an insured to understand the potential pitfalls of the National Flood Insurance Program; however, as harsh as it may seem, federal law requires the Court to strictly construe and enforce the claims presentment rules of the

SFIP.  Gowland v. Aetna Casualty and Surety Co., 143 F.3d 951, 954 (5th Cir. 1998) The filing of a Proof of Loss sufficient to allow FEMA the opportunity to properly evaluate a claim is required.  Foreman v. Federal Emergency Management Agency, 138 F.3d 543, 545 (5th Cir. 1998)    Charnock's sworn Proof of Loss did not comply with this requirement.  In the "best of all possible worlds" Charnock would be entitled to recover exactly the cost of restoring his house to its pre-hurricane condition, but in the "world" of the National Flood Insurance Program, any non-compliance not waived by FEMA can render an unfair result.  Only FEMA can forgive an insured's noncompliance, Gowland v. Aetna Casualty and Surety Co., 143 F.3d 951, 954 (5th Cir. 1998), this Court cannot force it to do so.  For whatever reason, FEMA will not forgive Charnock, even though it means he will not recover the amount it seems clear that he would be otherwise owed under the policy.  As a result, on the facts in this case, Charnock is not entitled to recover any additional insurance benefits.

## CONCLUSION

It is, therefore, **ORDERED** that the Amended Complaint of Peter Charnock, is **DISMISSED**.

**DONE** at Galveston, Texas, this _____7th_____ day of January, 2014.

_____
John R. Froeschner
United States Magistrate Judge

5